IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| In the Matter of | \| | CIV. NO. 23-00189-JMS-WRP |
| | \| | |
| JOHN M. SCHUM, | \| | RESPONDENT'S RESPONSE TO |
| | \| | ORDER TO SHOW CAUSE |
| Respondent. | \| | |
| | \| | |

I am humbled having to appear before Your Honor under these circumstances. I am equally ashamed of myself for any harm I have brought to Magistrate Judge Reber's stature as a jurist or an individual. As disappointed as I am with myself, this does not adequately express the remorse I have in knowing that valuable time from the Court's schedule must be used to address this issue.

The Order to Show Cause accurately identifies my errors in adhering to the requirements of the Protective Order that governed the handling of discovery items in the case. The Court does not request an explanation of how this occurred[1] but the "Order to Show Cause" permits me to establish why the Court should not impose additional discipline. In order to comply with that request, I will limit my comments to mitigate, not excuse my actions, and demonstrate to the Court why I believe additional discipline is unnecessary.

---

[1] The attachments to my Response provide the background associated with the violations. They are offered to fully explain my rationale for mitigating against further punishment in this matter.

Any violation of a Court Order is actionable, but my conduct was not intended to demean or challenge Magistrate Judge Reber's authority in issuing the Protective Order.  Although, my inadvertent and unintentional actions did not comply with the Protective Order, they did not cause any direct harm to the Parties in this case.  I now realize that providing the individuals a copy of their grand jury transcript during the interview with the defense team, and then retrieving the transcripts at the conclusion of the interview would have complied with the Protective Order and not resulted in my inadvertent violation of the Order.

When the Government Counsel advised there had been a violation of the Protective Order by the defense team, I immediately realized and acknowledged my inadvertent mishandling of the materials covered by the Protective Order and did not make excuses or attempts to minimize my actions.  Although, I am a relatively seasoned criminal defense attorney, my practice up until recently has predominantly been in State court where protective orders generally govern defendants being provided copies of their discovery.  This and the Miske cases are the only two federal cases where I recall signing a protective order.

In this case, when I was initially hired to serve as a temporary counsel (until Mr. Mitsunaga could retain mainland counsel), Government Counsel requested I sign the Protective Order.  This was done in July 2022, almost 2 full years before these errors occurred.  It was uncertain whether I would remain on the case.

2

However, when Ms. Nina Marino entered her appearance on October 18, 2022, she requested that I stay on the case as local counsel.

During November and December 2023, I was working under Ms. Marino's direction.  Prior to the motion hearing on November 30, 2023, Ms. Marino planned to be in Honolulu for a limited time to appear for the hearing and interview potential witnesses.  In preparation for her arrival and these witness interviews, Ms. Marino requested I schedule meeting with various witnesses including Carol Nakamura, who was represented by counsel.  When I contacted Ms. Nakamura's attorney to schedule an interview, he told me Ms. Nakamura was willing to meet with us.  Additionally, he asked for the opportunity to review her grand jury transcripts before the meeting.  I informed Ms. Marino about his request.  Ms. Marino directed me to email the grand jury transcripts to Ms. Nakamura's attorney and copy her on the email, so she had his contact information.  I complied with her direction and emailed Ms. Nakamura's grand jury transcript to her attorney and copied Ms. Marino and the other attorneys in her firm on the email.

The following week, Ms. Marino and another attorney from her firm arrived in Honolulu.  Again, Ms. Marino asked me to schedule interviews with as many witnesses as possible for her and her associate to interview while they were here.  Some of the witnesses scheduled for interviews by Ms. Marino and her associate had testified before the grand jury.  Ms. Marino intended to explore the nature of

these witnesses' grand jury testimony when she interviewed them.  To increase productivity, expedite the interview process and avoid inordinate delays, Ms. Marino directed me to email some of these witnesses their grand jury transcripts in advance of the interviews, which I complied.  I want to make it clear I am not advocating or arguing that by complying with Ms. Marino's directions (which constitutes a violation of the Protective Order) excuses my behavior.  I only state this to illustrate how Ms. Marino's directions, combined with my limited exposure and familiarity with these types of  Protective Orders, did not give me pause to contemplate what I was being asked to do would in any way violate the Protective Order I had signed regarding this case.

In April 2024, during the trial, other violations of the Protective Order brought this issue to the Court's attention.  In an ex parte appearance before the Court, Ms. Marino indicated she would notify Government Counsel the extent of the possible violations.  It was not until April 16, 2024, when I reviewed the draft letter Ms. Marino intended to provide to Government Counsel, I learned that neither her nor any members of her firm had been required to sign and be bound by the Protective Order.  (*See Attachment A – Kaplan Marino draft government letter*).  I disagreed with the tenor of the draft letter and indicated I would write my own version for Government Counsels' consideration if she intended to submit the letter as written.  Pointing out Government Counsels' failure to have Ms. Marino

sign the Protective Order was not needed to protect her, nor would it be in our

client's best interest.  Ms. Marino revised the letter admitting that as a whole, the

defense team failed to abide by the terms of the Protective Order which was

harmless to both the defense and the government.  (*See Attachment B – Kaplan*

*Marino government letter of April 16, 2024*).

When I was a military judge, one of my mentors offered me some sage

advise concerning sentencing.  He suggested that when deciding on an appropriate

sentence, I carefully consider and weigh whether the misconduct was an error in

judgment or a character flaw.  The former is deserving of leniency while the latter

may suggest a stronger need for retribution and deterrence depending on the

severity of the crime.  I humbly submit to Your Honor that the two instances of

which you are aware do not constitute a pattern of misconduct or a flawed moral

compass.  They are each separate and distinct actions and occurred six years apart.

I pray you recognize the current situation for what it was, an error in judgment,

where I failed to recall the existence of the Protective Order (due to a lack of

familiarity in these circumstances and the time lapse between when the document

was signed and these event occurred) and consequently abide by its requirements.

I am cognizant of the precarious situation I am confronting, while

advocating for leniency.  I humbly pray based on the circumstances I have describe

above, as well as my candor before the Court, while fully acknowledging my

6

responsibility for this inadvertent violation, that this Honorable Court determines

my actions do not necessitate any reason to impose additional punishment or

continue my probationary status.  I know and fully appreciate the consequences of

any further infractions.

Respectfully submitted,

 */s/ John Schum*
John Schum

6

# ATTACHMENT

# A



KAPLAN | MARINO

kaplanmarino.com

April 16, 2024

**<u>Via Email</u>**

Michael G. Wheat
Joseph J.M. Orabona
Janaki G. Chopra
Colin M. McDonald
Andrew Y. Chiang
Assistant United States Attorneys
michael.wheat@usdoj.gov
Joseph.orabona@usdoj.gov
Janaki.Chopra@usdoj.gov
Colin.McDonald@usdoj.gov
Andrew.Chiang@usdoj.gov


**Re**: *United States v. Dennis Mitsunaga*, Case No. 22-cr-048

Government Counsel:

This letter is written to address inadvertent violations of the Protective Order made by the attorneys for Mr. Mitsunaga. This letter does not address any violations of the Protective Order by Mr. Mitsunaga, nor does it address allegations of witness tampering.[1]

Following the hearing on April 15, 2024, in connection with Government Emergency Motion for Enforcement of Protective Order, I undertook a search of email to determine if there were any other inadvertent breaches of the Protective Order.

That search disclosed that on November 27, 2023, two emails were sent by John Schum with copy to me as well as other members of Kaplan Marino to Mr. Ishibashi as counsel for Carol Nakamura that contained grand jury materials responsive to his request to John Schum for same. My email copy reflects the transmission of materials included FBI 302 dated May 20, 2022 (KM-GJ-RPTS-000112); Ms. Nakamura's calendars (KM-GJ-RPTS-000071.01-71.48). The previous email copy reflects that Ms. Nakamura's grand jury transcripts (KM-GJT-003883-3949, 003954-4035, 003513-3588, 004369-4426, 003656-3688) were sent as well, although the copy

---

[1] I note that pursuant to the existing Protective Order Mr. Mitsunaga is permitted to possess grand jury material but not permitted to disseminate.

Letter to Government Counsel
April 16, 2024
Page 2



of the email received by members of Kaplan Marino does not reflect the attachments.

Mr. Mitsos also performed a search of his email, revealing a March 1, 2024 email to Andrew Chong with copy to myself, providing discovery materials (KM-VP-OSAKI-000706.041, 043, 045, 141, 144, 146, and 148). Identical documents were independently provided to us, these materials were discussed on the record in MAU v. MAI, and portions of these materials were admitted in the same action. To the extent these documents are public record, we do not believe this was a violation of the Protective Order. We nevertheless make this disclosure in an abundance of caution and transparency. To the extent this disclosure violated the Protective Order, it was inadvertent.

I also inquired of Mr. Schum. Mr. Schum stated that in or around December 5 or 6, 2023, he provided Mr. Ball and Mr. Santana their own grand jury transcripts (Chris Ball: KM-GJT-000118-133, 002317-2330, 000318-358, 002419-2451, 003075-3123; Kenneth Santana: KM-GJT-000028-73, 000196-264, 000359-401) by emailing same to Lynn Taguchi and asking her to deliver those transcripts to Mr. Ball and Mr. Santana in connection with upcoming scheduled witness interviews. Mr. Schum email reflects that Ms. Nakamura's grand jury transcripts (KM-GJT-003883-3949, 003954-4035, 003513-3588, 004369-4426, 003656-3688) were sent to Mr. Ishibashi on November 27, 2023.

Other than what I have stated in this letter, and what I understand the government to already know regarding the Hyun grand jury transcripts and the Alivado grand jury transcript, I have no reason to believe that any other grand jury materials were inadvertently disseminated.

During the first week of December, Mr. Mitsos and I traveled to Honolulu to conduct witness interviews in connection with this case. John Schum participated in those interviews. Included in those interviews were Mr. Ball, Mr. Santana, and Mr. Chong. While I acknowledge that these witnesses were not permitted to have physical possession of their own grand jury transcripts pursuant to the terms of the protective order (Mr. Chong did not have any grand jury testimony), the Protective Order does permit their review in the presence of counsel in preparation of the case. Our mistake was in the application of the process. In other words, the grand jury transcripts were inadvertently provided to these witnesses inappropriately, but not used in an inappropriate manner.

I note that I was never asked nor was anyone from my firm ever asked by the government to sign the Protective Order in this case, and that neither I nor anyone from Kaplan Marino did in fact sign the Protective Order in this case. Mr. Schum signed the Protective Order on July 5, 2022. I did not enter an appearance in this case until October 18, 2022. I also note that the government identified more than 80 witnesses in this case and many of those witnesses were related to or employees of MAI requiring that we interview them. Mr. Mitsos and I live and work on the mainland and had limited time in which to conduct interviews. Our unintentional failure to follow the letter of the protective order was a mistake. For that, I apologize.

Letter to Government Counsel
April 16, 2024
Page 3

K|M

K A P L A N | M A R I N O

Any violations of the protective order were inadvertent and procedural in nature. Meaning that the grand jury testimony and other materials were provided for the purpose of witness interviews only. At no time did Mr. Mitsos, Mr. Schum or I harbor any intent to commit wrongdoing. We collectively misinterpreted the process of interviewing witnesses utilizing their own witness testimony as directed by the protective order. I am unaware of any harm to the proceedings or prejudice to the government caused by our mistake.

To remediate our mistake, I have contacted counsel for Ms. Nakamura, counsel for Mr. Ball, counsel for Mr. Chong, Ms. Taguchi and Mr. Santana for the purpose of clawing back any inadvertently provided grand jury material. Mr. Ishibashi has replied that he has grand jury transcripts on his computer. I advised him to transfer those materials to a flash drive and remove them from his computer. I further advised that once completed he should let me know and I will arrange for the pickup of the flash drive. Mr. Ball has provided me with a flash drive of the material that he received, and I will provide that to you tomorrow. In preparing the flash drive Mr. Ball advised that he removed the materials from his computer. Mr. Santana has responded that he never received any material. I am awaiting responses from Mr. Chong and Ms. Taguchi. I have not contacted counsel for Mr. and Mrs. Hyun because I assume the government has already clawed back those materials. Please advise if I am mistaken.

Mr. Mitsos, Mr. Schum, and I now fully understand the strict requirements of the Protective Order and remain amenable to a modified order.

Sincerely,

KAPLAN MARINO, P.C.

/s/

NINA MARINO

Cc:
Ryan Mitsos
John Schum
Birney Bervar
Doris Lum
Andrew Kennedy
Thomas Otake
Mark Mermelstein
Andrew Cowan
Crystal Glendon
mitsos@kaplanmarino.com
john@johnschum.com
bbb@bervar-jones.com

Letter to Government Counsel
April 16, 2024
Page 4

K|M

K A P L A N | M A R I N O

doris@dorislumlaw.com
andrew@kona-lawyer.com
thomas@otakelaw.com
mmermelstein@holmesathey.com
acowan@holmesathey.com
crystal@glendonponce.com

# ATTACHMENT

# B

(K|M)

**KAPLAN | MARINO**

kaplanmarino.com

April 16, 2024

**Via Email**

Michael G. Wheat
Joseph J.M. Orabona
Janaki G. Chopra
Colin M. McDonald
Andrew Y. Chiang
Assistant United States Attorneys
michael.wheat@usdoj.gov
Joseph.orabona@usdoj.gov
Janaki.Chopra@usdoj.gov
Colin.McDonald@usdoj.gov
Andrew.Chiang@usdoj.gov

**Re**: *United States v. Dennis Mitsunaga*, Case No. 22-cr-048

Government Counsel:

This letter is written to address inadvertent violations of the Protective Order made by the attorneys for Mr. Mitsunaga. This letter does not address any violations of the Protective Order by Mr. Mitsunaga, nor does it address allegations of witness tampering.[1]

Following the hearing on April 15, 2024, in connection with Government Emergency Motion for Enforcement of Protective Order, I undertook a search of email to determine if there were any other inadvertent breaches of the Protective Order.

That search disclosed that on November 27, 2023, two emails were sent by John Schum with copy to me as well as other members of Kaplan Marino to Mr. Ishibashi as counsel for Carol Nakamura that contained grand jury materials responsive to his request to John Schum for same. My email copy reflects the transmission of materials included FBI 302 dated May 20, 2022 (KM-GJ-RPTS-000112); Ms. Nakamura's calendars (KM-GJ-RPTS-000071.01-71.48). The previous email copy reflects that Ms. Nakamura's grand jury transcripts (KM-GJT-003883-3949, 003954-4035, 003513-3588, 004369-4426, 003656-3688) were sent as well.

---

[1] I note that pursuant to the existing Protective Order Mr. Mitsunaga is permitted to possess grand jury material but not permitted to disseminate.

1546 N. Fairfax Avenue                                              T 310.557.0007
Los Angeles, CA 90046                                              F 310.861.1776

Letter to Government Counsel
April 16, 2024
Page 2

Mr. Mitsos also performed a search of his email, revealing a March 1, 2024 email to Andrew Chong with copy to myself, providing discovery materials (KM-VP-OSAKI-000706.041, 043, 045, 141, 144, 146, and 148). Identical documents were independently provided to us, these materials were discussed on the record in MAU v. MAI, and portions of these materials were admitted in the same action. To the extent these documents are public record, we do not believe this was a violation of the Protective Order. We nevertheless make this disclosure in an abundance of caution and transparency. To the extent this disclosure violated the Protective Order, it was inadvertent.

I also inquired of Mr. Schum. Mr. Schum stated that in or around December 5 or 6, 2023, he provided Mr. Ball and Mr. Santana their own grand jury transcripts (Chris Ball: KM-GJT-000118-133, 002317-2330, 000318-358, 002419-2451, 003075-3123; Kenneth Santana: KM-GJT-000028-73, 000196-264, 000359-401) by emailing same to Lynn Taguchi and asking her to deliver those transcripts to Mr. Ball and Mr. Santana in connection with upcoming scheduled witness interviews.

Other than what I have stated in this letter, and what I understand the government to already know regarding the Hyun grand jury transcripts and the Alivado grand jury transcript, I have no reason to believe that any other grand jury materials were inadvertently disseminated.

During the first week of December, Mr. Mitsos and I traveled to Honolulu to conduct witness interviews in connection with this case. John Schum participated in those interviews. Included in those interviews were Mr. Ball, Mr. Santana, and Mr. Chong. While I acknowledge that these witnesses were not permitted to have physical possession of their own grand jury transcripts pursuant to the terms of the protective order (Mr. Chong did not have any grand jury testimony), the Protective Order does permit their review in the presence of counsel in preparation of the case. Our mistake was in the application of the process. In other words, the grand jury transcripts were inadvertently provided to these witnesses inappropriately, but not used in an inappropriate manner.

I note that the government identified more than 80 witnesses in this case and many of those witnesses were related to or employees of MAI requiring that we interview them. Mr. Mitsos and I live and work on the mainland and had limited time in which to conduct interviews. Our unintentional failure to follow the letter of the protective order was a mistake. For that, I apologize.

Any violations of the protective order were inadvertent and procedural in nature. Meaning that the grand jury testimony and other materials were provided for the purpose of witness interviews only. At no time did Mr. Mitsos, Mr. Schum or I harbor any intent to commit wrongdoing. We collectively misinterpreted the process of interviewing witnesses utilizing their own witness testimony as directed by the protective order. I am unaware of any harm to the proceedings or prejudice to the government caused by our mistake.

Letter to Government Counsel
April 16, 2024
Page 3

K|M

K A P L A N | M A R I N O

To remediate our mistake, I have contacted counsel for Ms. Nakamura, counsel for Mr. Ball, counsel for Mr. Chong, Ms. Taguchi and Mr. Santana for the purpose of clawing back any inadvertently provided grand jury material. Mr. Ishibashi has replied that he has grand jury transcripts on his computer, but that he was not provided an FBI 302 or calendars by Mr. Schum. I advised him to transfer the materials he has to a flash drive and remove them from his computer. I further advised that once completed he should let me know and I will arrange for the pickup of the flash drive. Mr. Ball has provided me with a flash drive of the material that he received, and I will provide that to you tomorrow. In preparing the flash drive Mr. Ball advised that he removed the materials from his computer. Mr. Santana has responded that he never received any material. I am awaiting responses from Mr. Chong and Ms. Taguchi. I have not contacted counsel for Mr. and Mrs. Hyun because I assume the government has already clawed back those materials. Please advise if I am mistaken.

Mr. Mitsos, Mr. Schum, and I now fully understand the strict requirements of the Protective Order and remain amenable to a modified order.

Sincerely,

KAPLAN MARINO, P.C.

/s/

NINA MARINO

Cc:
Ryan Mitsos
John Schum
Richard Kaplan
Jennifer Lieser
Samantha Turner
mitsos@kaplanmarino.com
john@johnschum.com
kaplan@kaplanmarino.com
Lieser@kaplanmarino.com
turner@kaplanmarino.com