IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter of | CIV. NO. 23-00189-JMS-WRP |
| JOHN M. SCHUM, | RESPONDENT'S COMMENTS IN RESPONSE TO FURTHER ORDER TO SHOW CAUSE |
| Respondent. | |

I am grateful for the opportunity to appear before this Three Judge Panel (Panel). The comments I am providing are to assist the Panel in addressing the issues specified in the Further Order to Show Cause. I pray that the comments and material provided will support the conclusion that further suspension or additional punishment is unnecessary.

## Protective Order

Consistent with my previous filing, I acknowledge that I violated the protective order. However, I did not knowingly or intentionally violate the Order. Instead, I failed to recall there was an Order that protected specific information from being disclosed. The protective order did not prohibit individuals from having access to their grand jury testimony. Had I allowed the individuals to review the transcripts of their grand jury testimony contemporaneously with the interview and collected the copies at its conclusion, there would have been no violation of the Order.

1

I humbly submit that my error in adhering to the provisions of the Order was not an ethical violation. If the Panel disagrees, the fact that there was no harm should mitigate and/or negate the need for additional punishment. During the trial, Government Counsel and the Court were aware of the violations. Since the Government was not precluded from calling any individual who had seen their transcripts, the Government was not prejudiced as a result.

### Unauthorized Practice of Law

As an initial matter, I did not have contact with any client while I was suspended. Additionally, I do not believe the work I performed constituted the unauthorized practice of law. The logical reason for working while suspended would be to earn money. However, I did not request nor receive any compensation for the work that I performed supporting Ms. Marino's defense of Mr. Mitsunaga. Although payment is not dispositive of the matter, I made a conscientious decision to forgo any compensation to avoid even the appearance that I was engaging in the unauthorized practice of law.

I was aware that my suspension could potentially harm Mr. Mitsunaga and was attempting to fulfill my ethical and moral obligation to support Mr. Mitsunaga's defense within the bounds of the requirements of my

2

suspension.   Throughout my suspension, I never represented myself as an attorney, or as Mr. Mitsunaga's counsel, to any of the individuals with whom I spoke.

Although, I was present during the interviews conducted by Ms. Marino and the defense team, I was not introduced to any of the witnesses as Mr. Mitsunaga's counsel or even as an attorney.  Furthermore, I did not participate in the direct questioning of these individuals.  My participation in these interviews was limited to being present, observing and taking notes, all functions which paralegals routinely perform.

During the period of my suspension, the defense attorneys involved in the federal trial were operating as part of a joint defense agreement.  They all were aware of my suspension and the work that I was performing for Ms. Marino, and in some instances directly for them, collectively.  I also did not have any contact with their clients.

To ensure that the work I was asked to perform would not result in the unauthorized practice of law, I specifically reviewed RSCH Rule 2.16(h) and HRPC Rule 5.5(c).  These rules prohibit "hav[ing] any contact with persons who have legal dealings with the office in which [a suspended attorney] maintains a presence."  Since the phrase "legal dealings" is undefined by these rules, I attempted to locate case law which defined this

term. However, based on the research I conducted, I was unable to locate any case law which specifically defined this term.

I also reviewed what work is permissible for a suspended attorney to do in other jurisdictions, specifically California. I chose California for two reasons. First, it where I am also licensed to practice and was the jurisdiction where Ms. Marino and other attorneys who were involved in the case were licensed. Second, in some of the state court filings in this matter, the Chief Disciplinary Counsel has mentioned that the Rules of Professional Conduct for California and Hawai`i are very similar in nature. California Rules of Professional Conduct Rules 5.3.1(c)(1)-(3) allow a suspended or disbarred attorney to provide:

> "[l]egal work of a preparatory nature, such as legal research, the *assemblage of data*"; "[d]*irect communication* with the client or *third parties regarding matters such as scheduling*, billing, updates, confirmation of receipt or sending of correspondence and message"; and '[a]*ccompanying an active lawyer in attending a deposition* or other discovery matter *for the limited purpose of providing clerical assistance* to the active lawyer who will appear as the representative of the client" (emphasis added).

As discussed in the previous paragraphs, California's definition of permissible actions is wholly representative of the work I performed. No one I contacted was a client of Ms. Marino's or my practice. None of these individuals were seeking assistance from either of our firms, nor did

we provide them legal services or advise. They were all potential witnesses in a federal trial.

The sole purpose for contacting these third parties was to merely schedule an interview with Ms. Marino and her associate, for them to determine if these individuals could provide relevant evidence in support of the defense. My presence at the interviews was to provide clerical assistance (note taking), which is specifically allowed under California's rules. Ultimately, none of these individuals were called as defense witnesses; nor to my knowledge have had any other association with Ms. Marino's firm. None have had any association with my practice.

In case law I reviewed, the Hawai`i Supreme Court addressed the greater restrictions controlling what actions a suspended attorney can perform:

> A suspended attorney is, indeed, under greater strictures than a layperson with regards to conduct that may constitute the practice of law. … This is because, in contrast to a lay person, a suspended attorney <u>applying legal skills to a matter</u> <u>gives the appearance of, and equates to, engagement in the practice of law</u>.
>
> *ODC v. Tagupa*, SCt. #26762, 2016 WL 129536 (Haw. 2016) (emphasis added).

5

The work I performed was classified in my previous submission as specific Events and the topics were identified as Review Documents, Communications, Drafting, and Interviews.

## Review Documents

The work I performed under this grouping included forwarding documents (various individuals' campaign contributions) I had prepared before my suspension and reviewing juror cards.  In regard to the juror cards, my review included identifying potential jurors who resided on the outer islands or had other availability issues; identifying information which may give rise to a challenge for cause; and preparing a draft Strike List for the attorneys' consideration.  In reviewing State Campaign Spending Reports, I reviewed and collected information from the State database and was asked to explain the difference in the monetary amounts contained in our reports compared to reports prepared by the Government's forensic accountant.  This was an accounting exercise and involved no legal analysis.

All of this work was requested by Ms. Marino, or other members of her firm who were working on the case.  Ms. Marino specifically asked me to prepare the Strike Lists for her and the other attorneys representing Co-Defendants.

### Communications

The work I performed under this grouping included responding to a request from Ryan Mitsos (Ms. Marino's associate and co-counsel for Mr. Mitsunaga) to sign a draft declaration explaining how I complied the Campaign Spending Reports. Additionally, I responded to requests from Ms. Marino for setting up interviews with potential witnesses she had identified; identifying a local jury consultant so that she could speak with him; contacting potential witnesses or attorneys who represented potential witnesses to schedule interviews; locating a document involving theft of company equipment; conducting other searches of the Campaign Spending Report database; and drafting subpoenas for witnesses whom she may desire to testify.

### Drafting

The work I performed under this grouping included responding to requests from Ms. Marino to provide a draft of questions she could ask prospective jurors; drafting subpoenas for potential witnesses she may want to call as witnesses; drafting a summary on media coverage for other campaigns; and compiling the information from juror cards that was included in the Strike Lists.

### Interviews

My role in the interviews of potential witnesses was limited to being present, listening to the interviews and taking notes. I did not question any of the potential witnesses. I was not introduced as an attorney nor as Mr. Mitsunaga's counsel.

### Summary

None of the work I performed during the period of my suspension required applying legal skill to a matter. The work was limited to clerical support or tasks normally performed by paralegals. All of my work product was submitted to attorneys who were fully aware of my suspension, and they did not raise any concerns that my efforts could be construed or perceived as engaging in the unauthorized practice of law.

### **Conclusions**

After the humbling experience associated with my initial suspension, I would not, and sincerely do not believe that I knowingly or intentionally violated the terms of the imposed suspension. Knowing that I would return to the *Kaneshiro* case once my suspension was completed, I appreciated Ms. Marino's efforts to allow me to work under her supervision, so I could maintain insight into the case without engaging in the unauthorized practice of law. The other attorneys, who were on the

*Kaneshiro* case, were fully aware of my suspended status and knew the exact nature of the work that I was performing for the benefit of the entire defense team. As diligent, professional attorneys, I believe that if they even considered that my efforts could be in any way be construed or perceived as engaging in the unauthorized practice of law, they would have immediately brought it to my or Ms. Marino's attention to ensure there was no adverse effect on their client or on the defense team's overall efforts.

Although, I fully admit and take full responsibility for my error which resulted in violating the protective order, I do not believe this constitutes an ethical violation or even if the Panel disagrees, there was no harm, so no additional punishment is warranted.

Finally, all of the work that I performed for Ms. Marino while in a suspended status was work which is routinely performed by legal secretaries, paralegals or other non-legal professionals and therefore does not rise to the level of being considered the unauthorized practice of law.

I humbly submit to this Honorable Court that my actions which are currently being considered do not constitute a pattern of intentional or knowing misconduct or a flawed moral compass.

Dated:  December 3, 2024          Very Respectfully Submitted,

                                                    /s/ *John M. Schum*
                                                   John M. Schum