IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| In the Matter of | Civil No. 23-00189 JMS-WRP |
| JOHN M. SCHUM, | ORDER OF SUSPENSION FROM THE PRACTICE OF LAW |
| Respondent. | |

## **INTRODUCTION**

On October 23, 2024, pursuant to Local Rule 83.4, this Court appointed a three-judge panel to consider whether Respondent John M. Schum ("Schum") should be disciplined for breaching his ethical obligations to the Court and, if so, what sanction should attach.  ECF No. 26.  The possible breaches concerned Schum's apparent violation of a protective order issued by this Court, as well as his apparent unauthorized practice of law during a period when his license was suspended.  *Id.* at PageID.858-59.

Schum acknowledges that he violated the protective order, but he represents that he did not breach his ethical obligations because he did not knowingly violate the order.  He separately contends that his conduct during his period of suspension did not constitute the practice of law.  Schum acknowledges, however, that he provided legal advice to other attorneys and that he expected those attorneys to take that advice seriously.

Having reviewed Schum's written response and heard his oral statements and argument at a hearing, the three-judge panel has recommended to the Court that it find (1) Schum has violated certain of his ethical obligations, and (2) sanctions should be imposed. For reasons that follow, the Court adopts the recommendation of the three-judge panel.

## BACKGROUND

The procedural history of this matter is lengthy and has been described in prior orders. *See* ECF Nos. 1, 17, 19, 20, 23, 26. The Court assumes the reader's familiarity with this history and describes it only as necessary to provide context for the present order.

Between October 13, 2023, and February 14, 2024, Schum was suspended from the practice of law in this Court. In addition, for a one-year period beginning on September 13, 2023, Schum was placed under a term of probation. ECF Nos. 17, at PageID.83-84 (Order of Suspension from the Practice of Law) and 19 (Order of Reinstatement).[1] The Court imposed these sanctions as a form of reciprocal discipline. That is, it suspended Schum from the practice of law in this Court because the California Supreme Court and the Hawai'i Supreme Court had

---

[1] More precisely, Schum was suspended from the practice of law in this Court for one year, with the one-year suspension held in abeyance pending his completion of a one-year probationary period effective as of September 13, 2023, and with an actual 60-day suspension effective October 13, 2023. ECF No. 17, at PageID.83-84. The actual suspension ended on February 14, 2024, after Schum provided proof that he had been reinstated to practice law before the Hawai'i Supreme Court (where he had also been suspended). ECF No. 19.

2

suspended him from the practice of law, and Schum did not object to an order of reciprocal discipline mirroring the discipline imposed by the Hawaiʻi Supreme Court. ECF No. 17, at PageID.83.

Before his license was suspended, Schum represented Dennis Kuniyuki Mitsunaga in a criminal proceeding in this Court, *United States v. Kaneshiro*, Cr. No. 22-00048 (D. Haw.). In that case, Schum signed a joint motion for a protective order that would govern the handling of discovery, including grand jury transcripts. The assigned U.S. Magistrate Judge granted the joint motion on July 6, 2022, and entered a "Protective Order Re Discovery" (the "Protective Order"). The Protective Order—which the Court publicly filed on the electronic docket for that case—allowed defense counsel to "show witnesses discovery materials as necessary for the preparation of the defense," but made clear that defense counsel "may not give copies of the materials to witnesses absent further Order of the Court." Protective Order, *Kaneshiro*, Cr. No. 22-00048 (July 6, 2022), ECF No. 47, at PageID.119.

In anticipation of his license being suspended in October 2023, Schum arranged for another attorney, Jessica A. Szemkow, to enter an appearance as local

Hawaiʻi counsel representing Mitsunaga.[2]  Other attorneys from outside the State of Hawaiʻi also continued to represent Mitsunaga *pro hac vice*.

A jury trial in the *Kaneshiro* case began in March 2024.  During the trial, it came to light that Schum had disseminated copies of grand jury transcripts to at least four individuals in violation of the Protective Order and during his one-year probationary period.  The Court therefore ordered Schum to "show cause why his probationary period should not be revoked and a new probationary period imposed, and why he should not be disciplined by this Court, to include possible suspension from the practice of law in this Court for a further period of time and/or disbarment."  ECF No. 20, at PageID.93.

In his response, Schum admitted his "errors in adhering to the requirements of the Protective Order that governed the handling of discovery items in the case." ECF No. 22, at PageID.95.  But he contended that further discipline was not warranted because he had "failed to recall the existence of the Protective Order" at the time he violated it.  *Id.* at PageID.99.  He explained that although he is a "relatively seasoned criminal defense attorney, [his] practice up until recently has predominantly been in State court where protective orders" contain materially

---

[2]      As Szemkow wrote in her notice of appearance:  "I have been retained to act as local counsel for Mr. Dennis Mitsunaga during Mr. John Schum's absence in this matter.  I will be local counsel on behalf of [*pro hac vice* counsel]."  Notice of Appearance, *Kaneshiro*, Cr. No. 22-00048 (Oct. 12, 2023), ECF No. 289.

different provisions.  *Id.* at PageID.96.  And he contended that his violation of the Protective Order did not cause any significant harm.  *See id.* ("Although, my inadvertent and unintentional actions did not comply with the Protective Order, they did not cause any direct harm to the Parties in this case."); *id.* at PageID.99 (contending that his "fail[ure] to abide by the terms of the Protective Order . . . was harmless to both the defense and the government").

But Schum's response revealed a new cause for concern:  he had continued to work on the Mitsunaga matter not only during his one-year probationary period, but more specifically in November and December 2023, when his license was *actually* suspended and he had no authority to practice law in this Court.  Schum's work included, at a minimum, providing grand jury transcripts to witnesses in violation of the Protective Order and attending witness interviews during the first week of December 2023.

Based on Schum's response, the Court entered a Further Order to Show Cause directing him to produce "copies of all timesheets, billing statements, or other documentation reflecting work performed on federal court cases, including *United States v. Kaneshiro*, for the time period October 13, 2023 through February 14, 2024."  ECF No. 23, at PageID.111.[3]  Schum provided two responses to that

---

[3]  Because "such information [wa]s almost certain to include privileged information," the Court authorized Schum to file his response "under seal for the court's in camera review."  ECF No. 23, at PageID.111.

Order, claiming in part that he did not engage in the practice of law during his term of suspension.  *See* ECF Nos. 24 & 25.

The Court appointed a three-judge panel—consisting of Chief Judge Derrick K. Watson, Judge Micah W.J. Smith, and Judge Shanlyn A.S. Park—to consider whether Schum had breached his ethical obligations to this Court and what, if any, sanction should be imposed.  ECF No. 26.  In its order appointing the panel, the Court provided notice to Schum that the three-judge panel would consider whether he had violated this Court's September 20, 2023, Order of Suspension from the Practice of Law.  *Id.* at PageID.859.  And because Local Rule 83.3 requires "[e]very member of the bar of this court" to "observe the standards of professional and ethical conduct required of members of the State Bar of Hawaii," the Court also provided notice that the three-judge panel would consider whether he had breached those standards of professional and ethical conduct.  *Id.* at PageID.859 n.2.[4]

---

[4]    In particular, the Court identified Hawaiʻi Rules of Professional Conduct ("HRPC") Rule 3.4(e) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."); HRPC Rule 5.5(a) ("A lawyer shall not . . . practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction . . . ."); Hawaiʻi Revised Statutes ("HRS") §§ 605-14 to -17 (2016) (making the unauthorized practice of law a misdemeanor); HRPC Rule 8.4(b) ("It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."); and HRPC Rule 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").

The three-judge panel scheduled a hearing for December 4, 2024, and directed Schum and/or his representative to appear.  ECF No. 27.  Schum filed written comments on December 3, 2024, ECF No. 28, and he appeared on his own behalf at the hearing the next day.  At the hearing, the panel afforded Schum an opportunity to present his own factual statements and explanations for his conduct, as well as oral argument on the questions of whether any ethical obligations had been breached and what sanction, if any, was warranted.

## DISCUSSION

"Discipline is a remedy for professional failure," and when properly imposed, it "vindicates the interest in protecting the public and deterring unethical behavior."  Stephen Gillers, *Regulation of Lawyers: Problems of Law and Ethics* 715 (9th ed. 2012).  There are two possible grounds for discipline here:  (1) that Schum knowingly disobeyed the Protective Order issued by this Court, in breach of his ethical obligation under Hawaiʻi Rules of Professional Conduct ("HRPC") Rule 3.4(e); and (2) that Schum engaged in the unauthorized practice of law during a period when his license to practice before this Court had been suspended, in contravention of this Court's September 20, 2023, Order of Suspension from the Practice of Law, HRPC Rule 5.5(a), Hawaiʻi Revised Statutes ("HRS") §§ 605-14 to -17 (2016), HRPC Rule 8.4(b), and HRPC Rule 8.4(c).  The Court considers each ground in turn.

### A.      The Protective Order

Under HRPC Rule 3.4(e), it is a breach of an attorney's ethical obligations to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."  Nearly every aspect of this rule has been undisputedly shown:  Schum acknowledges that he violated —that is, disobeyed—the Protective Order entered by this Court.  He does not dispute that the Protective Order qualifies as an "obligation under the rules of a tribunal."  And he does not suggest that the Protective Order was somehow invalid, let alone that his failure to comply with it was an "open refusal" to adhere to it.  The only open question under HRPC Rule 3.4(e) is whether Schum "knowingly" violated the Protective Order.

On the issue of knowledge, it is significant that Schum himself signed the joint motion requesting that the Protective Order be entered.  Having joined in the request for the order, which proposed its very terms, Schum would be hard-pressed to deny being familiar with those terms.  Against that backdrop, at the December 4, 2024 hearing, Schum acknowledged that at the time the Protective Order was entered in July 2022, he knew of the order and understood its terms—including its requirement that copies of discovery materials could not be given to witnesses absent further order of the Court.

Schum nonetheless maintains that the knowledge requirement of HRPC Rule 3.4(e) has not been met. His argument hinges on the fact that "knowingly" in HRPC Rule 3.4(e) is an adverb that appears to modify the verb "disobey" (that is, the act of violating an order) rather than an adjective modifying the phrase "obligation under the rules of a tribunal" (that is, the fact of an order's existence and scope). In Schum's view, to find a violation of HRPC Rule 3.4(e), the Court must find that Schum knew he was violating the Protective Order when he did so; on this understanding, it would not be enough to find merely that he knew about the Protective Order and its terms at some point.

And Schum claims that he did not know he was violating the Protective Order when he distributed the copies of the grand jury transcripts to witnesses. Although he concededly was aware of the Protective Order at the time it was entered, he represents that he had forgotten about the order by the time he violated it. For that reason, he represents that his violation of the order was not done knowingly. He adds that he was especially likely to forget about the order because he practices principally in state court, where protective orders of the sort entered in *Kaneshiro* are uncommon.

This argument reflects poorly on Schum's performance as counsel. Licensed attorneys are responsible for ensuring that they have adequate systems for tracking and abiding by all court orders that are entered in cases in which they have

noticed an appearance. By his own admission, Schum failed to do so here. And the fact that his practice focused on state court matters does not obviously cut in his favor; one would expect a licensed attorney to be especially mindful of—and attentive to—court orders that require them to perform in ways that have not become matters of instinct. Nor would it have required any unusual or sophisticated system of document management to keep track of the Protective Order, given that the order was publicly filed on the Court's electronic docket. Even an occasional perusal of that docket would have reminded Schum of its existence. Moreover, Schum represented at the December 2024 hearing that he routinely downloads dockets filed in his cases and saves them in folders on his computer. Schum presumably followed that practice here, and so even reviewing his own case files should have flagged the order.

Nor is it obvious that Schum's understanding of HRPC Rule 3.4(e) is correct. Consider, for example, that a federal district judge has the inherent authority to impose sanctions even when an attorney lacks "subjective bad faith." *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) (holding that "an attorney's reckless misstatements of law and fact" are "sanctionable under a court's inherent power," when coupled with "an additional factor such as frivolousness, harassment, or an improper purpose"). As a consequence, an attorney may not escape accountability for violating a court order through the simple expedient of

claiming to have forgotten about it.  And while the Court here considers only

whether *additional* discipline should be imposed for Schum's violation of HRPC

Rule 3.4(e)—that is, discipline *in addition to* any sanctions the district judge

assigned to the *Kaneshiro* case may choose to impose—one may still fairly

question why HRPC Rule 3.4(e) would be any more hospitable to a defense of

forgetfulness.

To be sure, HRPC Rule 3.4(e) uses the word "knowingly," which is defined

as "denot[ing] actual knowledge of the fact in question."  HRPC Rule 1.0(f).  And

the "knowingly" requirement has teeth, as the Hawaiʻi Supreme Court emphasized

in *In re Partington*, 146 Hawaiʻi 243, 252, 463 P.3d 900, 909 (2020), where it held

that an attorney's failure to file a timely appellate brief could not be treated as a

violation of HRPC Rule 3.4(e) because there was "no indication that the [Office of

Disciplinary Counsel] conducted an investigation to determine whether Counsel

had 'knowingly' violated an obligation under a court rule."  But while it is settled

that a violation of HRPC Rule 3.4(e) requires actual knowledge, the Hawaiʻi

Supreme Court has not—as far as this Court is aware—had occasion to provide

further guidance as to what, precisely, an attorney must be found to actually know.

Schum's argument tees up, in other words, what appears to be an open

question of state law.  Although Schum posits that HRPC Rule 3.4(e) requires

actual knowledge that one's conduct violates an order, it is also conceivable that

the Hawaiʻi Supreme Court could interpret the rule as merely requiring that an

attorney have notice of an order and knowingly take the actions that constitute a

violation (whether they subjectively appreciate that it is a violation or not).  After

all, the Hawaiʻi Rules of Professional Conduct are "rules of reason" that "should

be interpreted with reference to the purposes of legal representation and of the law

itself." *Fragiao v. State*, 95 Hawaiʻi 9, 18, 18 P.3d 871, 880 (2001) (quoting

HRPC Scope 1).

In recognition of the Hawaiʻi Supreme Court's authoritative role in

construing the Hawaiʻi Rules of Professional Conduct, this Court declines to

resolve whether HRPC Rule 3.4(e) is as restrictive as Schum contends.  The Court

instead defers to the state disciplinary process.  State authorities may, if they

choose, consider (1) whether an attorney must remember a court order at the time

of a violation to be found in breach of HRPC Rule 3.4(e); and (2) whether, if such

recall is legally required, Schum in fact remembered the Protective Order here.

\*       \*       \*

Because of this Court's declination, it elects not to impose any discipline on

Schum for his violation of the Protective Order.  But Schum is admonished that he

must exercise proper diligence in tracking all court orders and ensure meticulous

compliance with them in the future.  The Court also emphasizes that this decision

does not limit, in any respect, the authority of the assigned judges in the *Kaneshiro* case to impose appropriate sanctions.

### B.    The Unauthorized Practice of Law

The second possible ground for discipline is that Schum engaged in the unauthorized practice of law, despite this Court's suspension order. On that ground, Schum's actions warrant discipline. The Court concludes that Schum did, indeed, engage in the unauthorized practice of law during the period of his actual suspension. By doing so, he breached his ethical obligations under this Court's September 20, 2023, Order of Suspension from the Practice of Law, HRPC Rule 5.5(a), and HRS §§ 605-14 to -17.[5]

### 1.    Relevant Law

In enacting HRS §§ 605-14 to -17, the Hawaiʻi state legislature "expressly declined to adopt a formal definition of the term 'practice of law,'" *Fought & Co. v. Steel Eng'g & Erection, Inc.*, 87 Hawaiʻi 37, 45, 951 P.2d 487, 495 (1998), reasoning that "[a]ttempts to define the practice of law in terms of enumerating the specific types of services that come within the phrase are fruitless because new developments in society, whether legislative, social, or scientific in nature, continually create new concepts and new legal problems," *id.* (quoting S. Stand.

---

[5]    The Court declines to resolve whether Schum's unauthorized practice of law might also have breached HRPC Rule 8.4(b) and HRPC Rule 8.4(c).

Comm. Rep. No. 700, in 1955 Senate Journal, at 661; H. Stand. Comm. Rep. No.

612, in 1955 House Journal, at 783) (brackets in original).

Consequently, Hawaiʻi law provides no statutory definition of the phrase

"practice of law."  Hawaiʻi's Rules of Professional Conduct also do not define the

term and instead state that "[t]he definition of the practice of law is established by

law and varies from one jurisdiction to another."  HRPC Rule 5.5 cmt. [1]

(emphases omitted).

The legislative history of HRS §§ 605-14 to -17 does, however, make clear

that "the practice of law is not limited to appearing before the courts," but also

extends to "the giving of advice, the preparation of any document or the rendition

of any service to a third party affecting the legal rights of such party, where such

advice, drafting or rendition of service requires the use of any degree of legal

knowledge, skill or advocacy."  *Fought & Co.*, 87 Hawaiʻi at 45, 951 P.2d at 495

(quoting S. Stand. Comm. Rep. No. 700, in 1995 Senate Journal, at 661, and citing

H. Stand. Comm. Rep. No. 612, in 1955 House Journal, at 783) (cleaned up).

Relying on this legislative history, the Hawaiʻi Supreme Court in *Fought & Co.*

held that an attorney who was not licensed to practice in Hawaiʻi was "practicing

law" when he, among other things, consulted with a client's Hawaiʻi counsel

regarding an appeal; assisted Hawaiʻi counsel with legal research and analysis of

14

briefs submitted by other parties to the litigation; and reviewed and critiqued briefs prepared by Hawaiʻi counsel. *Id.* at 46, 951 P.2d at 496.[6]

Furthermore, the Hawaiʻi Supreme Court has held that a "suspended attorney" is "under greater strictures than a layperson with regards to conduct that may constitute the practice of law," precisely because "in contrast to a lay person, a suspended attorney applying legal skills to a matter gives the appearance of, and equates to, engagement in the practice of law." *Off. of Disciplinary Couns. v. Tagupa*, No. 26762, 2016 WL 1219536, at *1 (Haw. Mar. 24, 2016) (Order of Suspension). Accordingly, in Hawaiʻi, tasks that might be appropriate for a layperson—say, for example, a paralegal acting under the supervision of a licensed Hawaiʻi attorney—to perform might nonetheless qualify as the unauthorized practice of law for a suspended attorney.

### 2.    Schum Engaged in the Unauthorized Practice of Law

With these principles in mind, the Court concludes that Schum engaged in the unauthorized practice of law during his period of suspension from October 13, 2023, to February 14, 2024. To be clear, *some* of Schum's work on the *Kaneshiro*

---

[6]    The attorney in *Fought & Co.* also communicated directly with the client, but the Hawaiʻi Supreme Court found that that was only one of several ways in which the attorney had engaged in the practice of law. The other ways included the various activities described in the text above. And while the Hawaiʻi Supreme Court ultimately found that the attorney in *Fought & Co.* had not violated HRS §§ 605-14 or 605-17, it reached that conclusion only because the attorney's practice of law had not occurred "within the jurisdiction" of Hawaiʻi. 87 Hawaiʻi at 47-48, 951 P.2d at 497-98.

matter would not qualify as the practice of law—including his assistance with scheduling matters, compiling and clarifying factual data, and even attending witness interviews while remaining silent. But the Court concludes that Schum did practice law during his suspension period in at least two separate ways.

First, in advance of the jury trial in the *Kaneshiro* case, Schum prepared a list of eighteen "Draft Questions for Prospective Jurors" for use in conducting voir dire. *See* ECF No. 24, at PageID.304-06 ("Attachment K"). He also prepared a document offering advice on which prospective jurors should be struck. *Id.* at PageID.420-29 ("Attachment W"). Under the circumstances, this work on jury selection qualifies as "the giving of advice, the preparation of any document or the rendition of any service to a third party affecting the legal rights of such party, where such advice, drafting or rendition of service requires the use of any degree of legal knowledge, skill or advocacy." *Fought & Co.*, 87 Hawai'i at 45, 951 P.2d at 495 (cleaned up). That is true even though Schum provided his advice to *pro hac vice* counsel, rather than directly to his client. The Hawai'i Supreme Court in *Fought & Co.* found that an attorney outside of Hawai'i had engaged in the practice of law by, among other things, providing legal advice directly to Hawai'i-based attorneys. There is no reason why it would not similarly constitute the practice of law for a Hawai'i-based attorney to provide legal advice to out-of-state attorneys.

Schum rejoins that an attorney might properly ask for draft voir dire
questions from a paralegal or other layperson.  The Court need not disagree.
Importantly, here, the question is not whether such a task would qualify as the
practice of law for *any* layperson.  It is, instead, whether it constituted the practice
of law for a *suspended attorney* to do so, given that such an attorney is subject to
"greater strictures than a layperson with regards to conduct that may constitute the
practice of law." *Tagupa*, 2016 WL 1219536, at *1.  As a suspended attorney,
Schum practiced law when he crafted voir dire questions and provided jury
selection advice for a proceeding in a court from which he was suspended.

That is especially evident here, given that Schum provided draft voir dire
questions that largely concerned matters particular to the selection of a jury here in
Hawaiʻi.  It therefore should have been obvious that *pro hac vice* counsel would
rely on his legal judgment to a much greater extent that they would on advice from
a layperson.  Similarly, it should have been obvious that *pro hac vice* counsel
would rely on Schum's legal advice to a greater degree than, say, other attorneys
practicing in Hawaiʻi might have done.  After all, there was no other Hawaiʻi-
based counsel truly working on this case.  Although Schum had arranged for
another attorney to appear as local counsel during the time when his license was
suspended, *see supra* pp. 3-4 and note 2, he acknowledged at the December 4,
2024 hearing that the attorney was out of state the entire time, performed no work

17

on the case, and had noted her appearance merely so that there would continue to be a licensed local counsel of record in the *Kaneshiro* case. Indeed, the attorney was not even meaningfully *available* to perform work as local counsel; as Schum admitted at the hearing, that attorney was working on the renovation of a house on the East Coast after substituting in as local counsel. Especially given the totality of these circumstances, Schum's work on jury selection—acting, essentially, as de facto local counsel—constituted the unauthorized practice of law.

Second, in an email dated January 4, 2024, Schum provided extensive legal advice to *pro hac vice* counsel about the motions *in limine* to be filed on Mitsunaga's behalf. *See* ECF No. 24, at PageID.370-73 ("Attachment R"). This advice was not limited to factual or even case law research. It involved legal advice that only an experienced attorney could credibly provide—and, because the topics partly touched on matters particular to Hawai'i, it amounted to legal advice that one would expect local counsel to provide. For example, Schum advised that one set of topics (concerning a local political campaign) would be proper for a motion *in limine*, in part because there would not be any "downside to trying to exclude it." *Id.* at PageID.373. Schum further advised that two other possible motions *in limine* (concerning two other local politicians) were "a little more troubling" because there was a risk that they would bring unhelpful matters to the government's attention and they were not likely, through motions practice, "to

keep them out." *Id.* And Schum advised that a "character witness angle should be raised with" his client Mitsunaga, because counsel "need to let [Mitsunaga] know" about possible implications for trial. *Id.* Schum advised *pro hac vice* counsel that the team of attorneys "should probably sit down with both [Mitsunaga]" and a second person "and get them to tell us about" any matters of comparable significance "so that we can prepare any of our witnesses with the facts." *Id.*

This communication, coming from a suspended attorney, plainly constitutes "the giving of advice" that "requires the use of any degree of legal knowledge, skill or advocacy." *Fought & Co.*, 87 Hawaiʻi at 45, 951 P.2d at 495 (internal quotation marks omitted). Once again, that is especially clear here because Schum's legal advice touched on matters particular to Hawaiʻi, and as Schum acknowledged at the December 4, 2024 hearing, he understood that his opinions on these local matters would carry weight with *pro hac vice* counsel. Moreover, his opinions did not merely concern legal advice for *pro hac vice* counsel to weigh on their own—as appears to have been the case with Schum's work on jury selection. He took these communications a step further, effectively instructing *pro hac vice* counsel what advice the defense team should give to their client, whom he was prohibited from representing at the time. This type of advice—at least when given by a suspended attorney who is effectively acting as de facto local counsel—amounts to the unauthorized practice of law.

19

Resisting these conclusions, Schum points to California Rules of
Professional Conduct ("CRPC") Rule 5.3.1, which provides detailed guidance on
when a licensed attorney in California might properly employ a disbarred,
suspended, resigned, or involuntarily inactive lawyer.  Under that rule, an attorney
in California "may employ, associate in practice with, or assist an ineligible person
to perform research, drafting or clerical activities."  CRPC Rule 5.3.1(c).  The rule
goes on to provide specific examples of permissible work by an unlicensed
attorney, including "[l]egal work of a preparatory nature, such as legal research,
the assemblage of data and other necessary information, drafting of pleadings,
briefs, and other similar documents."  CRPC Rule 5.3.1(c)(1).  Schum argues that
all of the work he performed on the *Kaneshiro* case during his term of suspension
falls within these guidelines.  And he argues that it was appropriate for him to
abide by these California guidelines because Hawaiʻi's ethics rules, while offering
less concrete guidance on these issues, is often consistent with California.

As an initial matter, it is not at all obvious that California's rule on
employing suspended attorneys is a fair guide for Hawaiʻi's ethical requirements.
The California rule does not give a licensed attorney carte blanche to employ
suspended attorneys to engage in the work described in the rule.  Instead,
California imposes an important procedural requirement:  "Prior to or at the time of
employing, associating in practice with, or assisting a person the lawyer knows or

20

reasonably should know is an ineligible person, the lawyer shall serve upon the State Bar written notice of the employment, including a full description of such person's current bar status."  CRPC Rule 5.3.1(d) (asterisks omitted).  That written notice must, among other things, acknowledge what activities are prohibited to a suspended attorney, and affirm that the person will not "perform such activities."  *Id.*  And when the arrangement with the suspended attorney ends, the licensed attorney "shall promptly serve upon the State Bar written notice of the termination."  CRPC Rule 5.3.1(f) (asterisk omitted).  Hawaiʻi law has no similar procedural arrangement.  And it is far from clear that Hawaiʻi's ethics rules would embrace the substantive scope of California's rule without this significant procedural protection in place.

In any event, even if the substance of California's rule was a fair guide, Schum's conduct in this case is not consistent with it.  The legal advice he provided on jury selection and motions *in limine* here cannot be viewed as mere "research, drafting or clerical activities," let alone "[l]egal work of a preparatory nature."  CRPC Rule 5.1.3(c), (c)(1).  As explained above, Schum provided his legal advice to *pro hac vice* counsel while effectively working as local counsel on the *Kaneshiro* case.  To be sure, he had arranged for someone else to make an appearance as local counsel, but as he acknowledged at the December 4, 2024 hearing, he was well aware that the other attorney was in fact performing no work

21

on the case.  Accordingly, Schum was not merely providing notes, suggestions, or other preparatory work to another local counsel for them to use in performing the local counsel role.  Instead, by providing his advice to *pro hac vice* counsel, Schum was performing the role of local counsel himself.  In so doing, Schum engaged in the unauthorized practice of law.

### C.    The Appropriate Sanction

Given the Court's conclusion that Schum breached his ethical obligations by engaging in the unauthorized practice of law during his period of suspension, the Court must next determine what, if any, sanction is warranted.

In making that determination, the Court considers the factors set forth in the American Bar Association's Standards for Imposing Lawyer Sanctions (1984, rev. 1992) (hereinafter "ABA Standards"), which are:  (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.  ABA Standard 3.0; *see Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1159 (9th Cir. 2024) (recognizing that the ABA Standards are an appropriate reference when determining disciplinary sanctions); *Off. of Disciplinary Couns. v. Rapp*, 70 Hawaiʻi 539, 544, 777 P.2d 710, 714 (1989) (same).

### 1.     The Duty Violated

By engaging in the unauthorized practice of law, Schum violated an exceedingly important duty.  The seriousness of this breach is reflected in the fact that the unauthorized practice of law is a criminal misdemeanor under Hawaiʻi state law.

Moreover, under the ABA Standards, suspension is generally appropriate when a lawyer "knowingly engages" in criminal conduct of this sort, at least when—as here—it "seriously adversely reflects on the lawyer's fitness to practice."  ABA Standard 5.12.  Consistent with the ABA's guidance, significant periods of suspension have been imposed on other attorneys in Hawaiʻi who engaged in the unauthorized practice of law while suspended from practice.  *See, e.g.*, *Off. of Disciplinary Couns. v. Gould*, 119 Hawaiʻi 265, 195 P.3d 1197 (2008) (declining to reinstate a suspended attorney until five years had passed, owing to, among other things, his unauthorized practice of law while suspended); *Off. of Disciplinary Couns. v. Kea*, No. SCAD-13-0000135, 2013 WL 3364094 (Haw. July 2, 2013) (Order of Suspension) (suspending an attorney for five years for, among other things, providing legal advice to a client during a period of suspension); *Tagupa*, 2016 WL 1219536 (imposing a two-year suspension on an attorney for engaging in the practice of law while suspended); *Off. of Disciplinary Couns. v. Au*, No. SCAD-13-0000911, 2014 WL 228363 (Haw. Jan. 21, 2014)

(Order of Suspension) (suspending attorney for five years for practicing law while suspended).

For these reasons, the nature of the duty violated weighs heavily in favor of a serious sanction.

### 2.    Schum's Mental State

There is no question that Schum "knowingly" engaged in the unauthorized practice of law. He was well aware of his suspension from practice. And he does not dispute that he knowingly provided legal advice at issue. Although Schum represents that he did not appreciate that his conduct amounted to the unauthorized practice of law, his failure to appreciate that fact is immaterial. *See* ABA Standards, Definition ("'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.").

Schum contends that Hawaiʻi state law does not provide clear guidance on what constitutes the practice of law and that he reasonably relied on guidance from California. But while Hawaiʻi state law may not provide pellucidly clear guidance in all cases, it clearly and emphatically warns a suspended attorney that a "suspended attorney" is "under greater strictures than a layperson with regards to conduct that may constitute the practice of law." *Tagupa*, 2016 WL 1219536, at *1. Schum showed inadequate attentiveness to those strictures. And while he

claims to have relied on California guidance, that reliance—for the reasons explained above—was not well placed.

For these reasons, Schum's mental state weighs in favor of a serious sanction.

### 3.    Potential or Actual Injury

Among the most significant duties attorneys owe are those owed to their clients.  Here, Schum contends that his conduct did not cause any actual or potential injury to any client, and it may well be that his client was not prejudiced by receiving legal advice from a suspended attorney.

A suspended attorney's duty to refrain from the unauthorized practice of law is, however, also a duty owed to the general public and to the legal profession. Schum's conduct constituted a breach of his responsibility to the public to carefully abide by his ethical duties.  Accordingly, this factor, too, weighs in favor of a significant sanction.

### 4.    Aggravating and Mitigating Circumstances

Schum argues that he should not be sanctioned, in part, because he did not charge his client for his legal services during his period of suspension.  The Court agrees that this is a mitigating circumstance.  The significance of the mitigation is lessened, however, by the fact that Schum intended to resume his paid representation of Mitsunaga as soon as his suspension ended.  His willingness to

provide uncompensated services, therefore, is fairly viewed as an effort to preserve a relationship with a client that would be remunerative in the future.

Schum further argues that he acted out of the benevolent aim of providing continuity of service to a client who was facing criminal charges and an upcoming jury trial. This is hardly a mitigating circumstance, however, as Schum had been suspended from the practice of law because of earlier indiscretions. That suspension order precluded continuity of service, as Schum purported to recognize when he arranged for another person to appear as local counsel. It does not weigh in Schum's favor to argue that his fidelity to his client—who continued to receive attorney services from others—compelled him to disregard this Court's order.

The Court also recognizes, as mitigating circumstances, that the client and other counsel to whom Schum supplied legal advice were apparently aware that Schum was under an order of suspension. And the Court further recognizes that Schum does not appear to have previously been sanctioned for the unauthorized practice of law.

It is, however, a significant aggravating factor that Schum was under a suspension order as a result of prior discipline when he committed the ethical breach at issue here. Having been suspended from the practice of law, Schum should have been punctilious in his conduct. And yet he chose to engage in the unauthorized practice of law—and to perform as de facto local counsel while

arranging to have another attorney superficially appear to have taken on that role. This aggravating factor provides especially strong support for a serious sanction.

*    *    *

Having carefully evaluated the above considerations and all the circumstances of this matter, the Court concludes that a one-year suspension is appropriate. *See* ABA Standard 2.3 ("Generally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years.").

Accordingly, the Court ORDERS that Schum shall serve an actual one-year suspension from the practice of law in this Court, effective January 20, 2025.

The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  January 6, 2025, at Honolulu, Hawai'i.


/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

/s/ Jill A. Otake
Jill A. Otake
United States District Judge

/s/ Micah W.J. Smith
Micah W.J. Smith
United States District Judge

/s/ Shanlyn A.S. Park
Shanlyn A.S. Park
United States District Judge

---